IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS JULIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-131 |
| vs. | ) | |
| | ) | Chief District Judge Gary Lancaster |
| JEFFREY BEARD, et al., | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 26) be granted and that the Complaint be dismissed against Defendants Beard, Zwierzyna and Harlow in their individual capacities and that it be dismissed against all of the Defendants in their official capacities.

### II.  REPORT

Plaintiff, Thomas Julian, an inmate previously confined at the State Correctional Institution at Mercer, Pennsylvania, commenced this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights against the following Defendants: Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections (DOC); Kathleen Zwierzyna, Director of the Bureau of Standards, Practices and Sentence computation at DOC; Michael Harlow, former Superintendent of SCI-Mercer; Major Zetwo, former Security Captain of SCI-Mercer; William Woods, former Unit Manager at SCI-Mercer; Officer Albaugh, Gang Coordinator at SCI-Mercer;

Kimberly Boal, Corrections Health Care Administrator at SCI-Mercer; Captain Freehling; and Sergeant Ward. All of the Defendants are sued in their individual and official capacities.

### A. Standard of Review

Presently pending is the Partial Motion to Dismiss filed by Defendants Beard, Zwierzyna and Harlow (ECF No. 26). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the

Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege

sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

B. Relevant Allegations and Facts of Record

During the relevant time period, Plaintiff was an inmate incarcerated at the State Correctional Institution (SCI) at Mercer. He claims that in May of 2009 he fell from a top bunk due to losing consciousness and suffered a broken foot from the fall. At the time of this incident, Plaintiff had a "bottom bunk housing only" order from the SCI-Mercer medical department. He claims that he informed Defendants Zweto, Freehling, Woods and Boal of his "bottom-bunk" status but none of them took any action. He claims that housing unit officer Deets stated that Plaintiff's medical profile on the DOC computer system known as DOCNet did not indicate a bottom-bunk status. Plaintiff later learned that DOCNet had been upgraded/changed and that some medical information was located elsewhere. Plaintiff contends that there was a lack of sufficient training on the new system to educate staff about DOCNet, and regardless, a phone call would have confirmed the existence of a bottom-bunk order.

On May 22, 2009, Plaintiff filed Grievance MER 274134-09 concerning the incident (ECF No. 2-3, p. 1). On May 25, 2009, Defendant Freehling moved Plaintiff to a bottom-bunk. On May 29, 2009, Defendant Boal responded to Plaintiff's grievance confirming that he did indeed have an active medical order for Bottom Bunk status (ECF No. 2-3, p. 3). She further confirmed that Plaintiff was satisfied with his medical treatment.

On May 26th, Defendant Woods ordered Plaintiff to move from J Block to D Block despite Plaintiff's request to be transferred to K Block. D Block was approximately 100 yards away and at this time Plaintiff was housed on a second floor location whereas K block was only 20-30 feet

4

away. Woods denied Plaintiff's request for K Block and Freehling did nothing to stop the move to D block despite Plaintiff asking him to do so. As a result, Plaintiff had to carry his property down two flights of stairs approximately 100 yards to D block on a broken foot. Subsequently, on June 1, 2009, Corrections Officer Gibson informed Plaintiff that he had been terminated from his prison job, which he had held for several years previously without incident. Plaintiff believes that Defendant Ward, the Sergeant who supervised Plaintiff's prison employment, fired Plaintiff in retaliation for his filing a grievance.

On June 7, 2009, Plaintiff appealed the denial of his grievance as it related to his allegations that staff refused to abide by the medical order directing that he be placed on the bottom bunk (ECF no. 2-3, p. 4). On June 22, 2009, Superintendent Harlow remanded his grievance for further investigation (ECF No. 2-3, p. 5). On June 29, 2009, Plaintiff received another response to his grievance advising him that his placement in the top bunk was an error by the staff. The response further advised him that it was his responsibility to inform the Unit Manager via Request Slip of the discrepancy. As soon as the Unit Management team became aware of the situation, he was placed in a bottom bunk (ECF No. 2-3, p. 6). Plaintiff appealed this response to Superintendent Harlow, who upheld the response on July 14, 2009. Plaintiff filed an unsuccessful appeal to Central Office.

On July 27, 2009, Plaintiff was reassigned from D Block to K Block and was once again assigned to a top bunk. Plaintiff spoke with CO Bell about this, who then moved Plaintiff to a bottom bunk. In September of 2009, Plaintiff was reassigned again to HB Block, which was a cell block instead of dormitory type housing. In November of 2009, Defendants Zetwo and Albaugh told the "Latin Kings" gang that Plaintiff had given information about the gang to the security

department and that he was incarcerated due to a sexual offense involving children. Plaintiff states that when he was released from SCI-Mercer and sent to the Allegheny County Jail (ACJ), the "Pale Kingz" gang became aware of what Zetwo and Albaugh had told the Latin Kings thus requiring ACJ authorities to place him into protective custody.

## C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id*. (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

Plaintiff is seeking to hold Defendants Beard, Zwierzyna, and Harlow liable based on their supervisory positions within DOC. He alleges that Beard, the former Secretary of the DOC is legally responsible for the overall operation of the Department and each institution under its jurisdiction. He claims that as Secretary of the DOC, Beard automatically is responsible for everything that occurs in all DOC facilities at all times. He tries to hold Zwierzyna liable based on some sort of failure to train theory. Finally, he seeks to hold Harlow liable based on his actions in responding to Plaintiff's grievances.

The Court of Appeals for the Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted). Here, Plaintiff's Complaint fails to include any of those elements. He did not allege any facts indicating that Defendants Beard, Zwierzyna, and Harlow personally directed the actions set forth in his Complaint. Nor does it contain even a

7

remote suggestion that these Defendants had contemporaneous, personal knowledge of the events at issue and acquiesced in them. As such, the Complaint does not in any way meet the Third Circuit's standard for a legally adequate civil rights complaint.

Moreover, in Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989), the Court of Appeals for the Third Circuit concluded that a judgment could not properly be entered against the defendant based on supervisory liability absent an identification of a specific supervisory practice or procedure that the defendant failed to employ. "[U]nder the teachings of City of Canton it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [the plaintiff] identify specifically what it is that [the defendant] failed to do that evidences his deliberate indifference." Id. With respect to supervisory liability for Eighth Amendment claims, plaintiffs must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: 1) the existing custom and practice without that specific practice or procedure created an unreasonable risk; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample, 885 F.2d at 1118).

The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at 1118. The Court of Appeals for the Third Circuit further instructed that that is not the only way to make out such a claim, as "there are situations in which the risk of constitutionally cognizable

harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Beers-Capitol, 256 F.3d at 134 (citation omitted). Thus, for Plaintiffs' claim seeking to hold Defendants Beard, Zwierzyna, and/or Harlow liable for a deficient policy, he must show either that these Defendants failed to adequately respond to a pattern of past occurrences of injuries like the Plaintiff's or that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of these Defendants to respond supports a finding that the four-part test stated above is met. None of Plaintiff's allegations support liability against Defendants Beard, Zwierzyna, and/or Harlow in this regard.

Specifically, Plaintiff has not alleged that these Defendants were aware of a "pattern" of injuries excepting those at issue in his Complaint. Such allegations do not constitute a "pattern of past occurrences" as contemplated by Sample. Nor has he alleged that the risk of constitutionally cognizable harm was so great and so obvious that these Defendants must have known of the excessive risk but was indifferent to it. In other words, it cannot be inferred that these Defendants "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm." Farmer v. Brennan, 511 U.S. 825, 846 (1994). As the Court of Appeals for the Third Circuit has explained, it is not enough to allege that a defendant should have recognized the excessive risk and responded to it; a Plaintiff must show that the defendant must have recognized the excessive risk and ignored it. Beers-Capitol, 256 F.3d at 138 (citing Farmer). Here, Plaintiff's allegations do not show that these Defendants must have recognized an excessive risk and ignored it. Thus, they are insufficient to impose liability under 42 U.S.C. § 1983. *Accord* Gay v. Petsock, 917 F.2d 768 (3d Cir.1990) (affirming dismissal of superintendent noting that there was nothing in the record to

suggest that the superintendent was involved in the acts complained of or that they were done with his knowledge and acquiescence).

Plaintiff's sole theory of liability as to Defendant Harlow, former superintendent at SCI-Mercer, is that he was placed on notice of Plaintiff's claim through the grievance process. Merely responding to or reviewing an inmate grievance does not rise to the level of personal knowledge, or personal involvement necessary to allege a claim under 42 U.S.C. § 1983. Mincy v. Klem, Civil No. 11-2041, 2011 WL 4867550, 2 (3d Cir. Oct. 14, 2011); Simonton v. Tennis, Civil No. 11-1934, 2011 WL 2713247, 3 (3d Cir. July 13, 2011); Pressley v. Beard, 266 Fed. App'x 216, 218 (3d Cir. 2008).[1]

For the reasons set forth above, Plaintiff's allegations fail to assert a claim upon which relief may be granted against Defendants Beard, Zwierzyna and Harlow in their individual capacities. Consequently, their Partial Motion to Dismiss should be granted in this regard.

Plaintiff also seeks to assert liability against Defendants in their official capacities. A suit against a state government official in his official capacity is really a suit against the state. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). Thus, suing Defendants in their official capacity is considered a suit against the Commonwealth of Pennsylvania. *See* Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000).

Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution. In this regard, the withdrawal of jurisdiction in the

---

[1] *See also* Bullock v. Horn, Civil No. 3-991492, 2000 WL 1839171, *5 (M.D. Pa., Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").

Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978), and applies to suits brought by citizens of the defendant state as well. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa. Cons. Stat. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in

11

Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to the Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Consequently, Plaintiff's Complaint must be dismissed against all of the Defendants in their official capacities. Johnson v. Wenerowicz, Civil No. 11-2248, 2011 WL 3235681, 2 (3d Cir. July 29, 2011) (affirming District Court's conclusion that the Eleventh Amendment affords the DOC defendants protection from suit in their official capacities); Tindell v. Beard, 351 Fed. App'x 591, 595 (same).

### III. CONCLUSION

It is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 26) be granted and that the Complaint be dismissed against Defendants Beard, Zwierzyna and Harlow in their individual capacities and that it be dismissed against all of the Defendants in their official capacities.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

                                                Lisa Pupo Lenihan

November 4, 2011                            Chief United States Magistrate Judge

Thomas Julian
836 Linden Ave. Apt. 37.
East Pittsburgh, PA 15112